UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
:
WILLIAM SANDERS, :
: CASE NO. 4:03-CR-154
Petitioner, :
:
vs. : OPINION & ORDER
: [Resolving Doc. Nos. 111, 115]
UNITED STATES OF AMERICA, :
:
Respondent. :
:
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

On August 27, 2007, Petitioner William Sanders filed a motion to vacate or set aside his sentence pursuant to 28 U.S.C. § 2255. [Doc. 111.] With his petition, Sanders challenges his 2003 criminal conviction and 2005 sentence by this Court. Sanders says that this Court should overturn his conviction because: (1) his trial and appellate counsels were unconstitutionally ineffective, (2) Officer Michael Brindisi perjured himself while testifying against Sanders, and (3) Assistant United States Attorney Sharon Long suborned this perjury. [Doc. 111 at 4-7.] In addition, Sanders says this Court should modify his sentence under 18 U.S.C. § 3582(c)(2) because the 2007 amendments to the Sentencing Guidelines §4A1.2(b)(1)(A) should be retroactively applied to him. [Doc. 111-1 at 16.]

On July 21, 2009, Magistrate Judge James S. Gallas filed a Report and Recommendation that recommended the Court dismiss the Petitioner's petition. The Petitioner objects to the Magistrate

Case No. 4:03-CR-154
Gwin, J.

Judge's Report and Recommendation. For the reasons provided below, the Court **ADOPTS** the Magistrate Judge's Report and Recommendation and **DENIES** Petitioner Sanders' request to vacate or set aside his sentence as well as his request to modify his sentence.

### I. Background

The facts of this case were set forth in *State v. Sanders*, 404 F.3d 980 (6th Cir. 2005):

> Youngstown, Ohio, police officers Michael Brindisi and Paul Brown were on patrol at approximately 10:00 p.m. on December 20, 2002, when Officer Brindisi observed a vehicle-which he later identified as a silver and brown Pontiac Parisienne-nearly strike the front of their squad car. Officer Brindisi also observed the driver of the vehicle consuming some type of liquid from a can. As a result, Officer Brindisi turned the squad car around and began to follow the vehicle. After he activated the emergency lights and siren, the Pontiac accelerated and a chase ensued.
>
> After briefly losing sight of the vehicle, Officer Brindisi spotted it in a back alley behind an apartment complex on a nearby street. When he shined a spotlight in its direction, he and Officer Brown observed an individual running from the passenger side and the driver apparently preparing to exit the vehicle. Officer Brindisi testified that the driver proceeded to exit the vehicle and look back at the officers, at which point a gun fell from his jacket that he picked up and placed back in his jacket. According to Officer Brindisi, the driver then began running away through back yards, and he chased after him on foot. The driver jumped a small fence surrounding a garden and then scaled a higher chain-link fence a short distance away. As the driver cleared the second fence, Officer Brindisi testified, the gun again fell from his jacket. At that point, the two men were approximately an arm's length from each other, though on opposite sides of the fence, and Officer Brindisi noted that the driver was dressed all in black, had braided hair and was wearing a skull cap. The driver left the gun on the ground and continued running. Officer Brindisi, unable to scale the second fence, yelled to Officer Brown and used his radio to notify other officers in the area about the pursuit. Officer Brindisi testified that he proceeded to retrieve the weapon that the driver had dropped and secured it in his patrol car. At trial, he described the weapon as a Hi-Point .40 caliber semi-automatic firearm loaded with five rounds of ammunition; one round was chambered and four rounds were in the magazine.
>
> In response to Officer Brindisi's radio transmission, Officers Joseph Moran and Jason Simon responded to the scene and began looking for the driver. Officer Simon located defendant Sanders hiding inside a dumpster located on the property

Case No. 4:03-CR-154
Gwin, J.

of a nearby local business. Sanders was handcuffed and transported to Officer Brindisi's patrol car. At trial, Officer Brindisi identified Sanders as the driver of the vehicle and the individual whom Officers Moran and Simon had apprehended.

Several other notable pieces of evidence were introduced at trial. First, Officer Brindisi testified about certain items that were discovered in and taken from the Pontiac-namely, a blue and black backpack containing an awl, a crow bar, a flashlight, a surgical mask and a winter cap, as well as a can of Budweiser beer and a honey dispenser filled with gasoline. A label affixed to the backpack read "William Birch" and listed an address, but Officer Brindisi testified that he never had any contact with a person by that name.

Second, Beverly Bryant testified on behalf of the United States that, in the summer of 2002, she sold her used Pontiac Parisienne to Sanders, who was her neighbor at the time. Bryant testified that Sanders wanted her to title the car in his girlfriend's name, but that Bryant refused because she wanted to "do it the right *984 way." She filled out the seller's portion of the title and then gave it to Sanders; she did not see him fill out the buyer's portion.

Third, Agent Thomas Hopkins of the Bureau of Alcohol, Tobacco and Firearms testified for the United States that the Winchester .40 Smith and Wesson caliber ammunition that was found in the firearm that Sanders had allegedly dropped was manufactured by Winchester in Illinois and therefore traveled in interstate commerce. He also testified that the firearm itself was manufactured in Ohio and, therefore, did not travel in interstate commerce.

Sanders presented only one witness, Herb Rhoades, an investigator for the Ohio Bureau of Motor Vehicles, who testified that on the evening in question, Sanders's driver's license was under suspension.

Sanders moved for acquittal pursuant to Federal Rule of Criminal Procedure 29 at the close of the prosecution's case and again at the close of the defense's case. The district court denied both motions and submitted the case to the jury, which returned a verdict of guilty. Sanders was sentenced to 188 months of imprisonment followed by three years of supervised release.

*Sanders*, 404 F.3d at 983-84.

Sanders directly appealed his conviction and sentence to the Sixth Circuit on February 11, 2004. On April 20, 2005, the Court of Appeals affirmed his conviction but vacated his sentence

Case No. 4:03-CR-154
Gwin, J.

and remanded to this Court for re-sentencing based on the newly-announced standards of *United States v. Booker*, 543 U.S. 220 (2005). On remand, this Court considered *Booker* and re-sentenced Sanders to 180 months imprisonment.[Doc. 90.] Sanders then appealed his new sentence, and the Sixth Circuit affirmed the new sentence on January 9, 2007. [Doc. 101.]

On August 27, 2007, Sanders filed a motion for appointment of counsel to assist in discovery for an anticipated § 2255 petition. [Doc. 103.] Although this Court denied that portion of the motion seeking appointment of counsel, [Doc. 104], it informed Sanders that it would construe the remaining portions of the motion as a motion to vacate under § 2255. [Doc. 109.] The case was then referred to Magistrate Judge James S. Gallas on January 7, 2008, and Sanders filed a formal motion to vacate on January 24, 2008. [Docs. 110 & 111.]

Magistrate Judge Gallas filed his Report and Recommendation that Sanders' claims be dismissed on July 21, 2009. [Doc. 116.] Sanders objected to this Report and Recommendation on August 7, 2009.

## II. Legal Standards

*II.A. Federal Magistrates Act*

The Federal Magistrates Act requires a district court to conduct a de novo review only of those portions of a Report and Recommendation to which the parties have made an objection. 28 U.S.C. § 636(b)(1). Parties must file any objections to a Report and Recommendation within ten days of service. *Id.* Failure to object within that time waives a party's right to appeal the magistrate judge's recommendation. See Fed. R. Civ. P. 72(a); *Thomas v. Arn*, 474 U.S. 140, 145 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Absent objection, a district court may adopt the magistrate's report without review. *Thomas*, 474 U.S. at 149.

-4-

Case No. 4:03-CR-154
Gwin, J.

*II.B. Section 2255*

Section 2255 gives a federal prisoner post-conviction means of collaterally attacking a conviction or sentence that he says violates federal law. See *In re Gregory*, 181 F.3d 713, 714 (6th Cir. 1999). Section 2255 provides four grounds for a challenge to a conviction or sentence: (1) that the sentence was imposed in violation of the Constitution or laws of the United States; (2) that the court was without jurisdiction to impose such sentence; (3) that the sentence exceeded the maximum authorized by law; or (4) that the sentence is otherwise subject to collateral attack. *Hill v. United States*, 368 U.S. 424, 426-27 (1962); 28 U.S.C. § 2255.

To prevail on a § 2255 motion alleging a constitutional error, the movant "must establish an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)). To prevail on a § 2255 motion alleging a non-constitutional error, the movant must establish a "'fundamental defect which inherently results in a complete miscarriage of justice, or, an error so egregious that it amounts to a violation of due process.'" *Id.* ((citing *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (citing *Hill*, 368 U.S. at 428)).

The Court can summarily deny a motion to vacate if it plainly appears from the face of the motion and any annexed exhibits that the movant is not entitled to relief. *Smith v. United States*, 348 F.3d 545, 550 (6th Cir. 2003). Otherwise, the Court must hold an evidentiary hearing to determine the truth of movant's claims. *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir.2007). A § 2255 petitioner's "burden 'for establishing an entitlement to an evidentiary hearing is relatively light.'" *Smith*, 348 F.3d at 550. Nevertheless, the Court need not hold a hearing if the movant's allegations

Case No. 4:03-CR-154
Gwin, J.

cannot be accepted as true because they are contradicted by the record, are inherently incredible, or are conclusions rather than statements of fact. *Valentine*, 488 F.3d at 333.

### III. Analysis

Because Petitioner Sanders' petition challenges both his conviction and his sentence, which became final on separate dates, this Court separately considers the timeliness of each before turning to their merits.

*III.A. Sanders' Challenges to His Conviction*

Sanders' first three grounds for habeas relief challenge the constitutionality of his conviction. 28 U.S.C. § 2255(f) provides a one-year statute of limitations for § 2255 petitions. Generally, this limitations period begins to run on "the date on which the judgment of conviction becomes final." § 2255(f)(1). When a federal criminal defendant such as Sanders takes a direct appeal of his conviction to the court of appeals, his judgment of conviction becomes final "upon the expiration of the 90-day period in which the defendant could have petitioned for certiorari to the Supreme Court, even when no certiorari petition is filed. *Sanchez-Castellano v. United States*, 358 F.3d 424, 426-27 (6th Cir. 2004) (citing *Clay v. United States*, 537 U.S. 522, 532 (2003)). Therefore, Sanders' conviction became final for § 2255 purposes on August 10, 2005, ninety days after the Sixth Circuit affirmed his conviction, and the statute of limitations ran one-year later: August 10, 2006.

Because Sanders filed his petition almost one year after the limitations period expired, it is presumptively time barred. Sanders may overcome this time bar, however, if he can show that one of the other three subsections of § 2255(f) applies to his petition and triggers a later limitations period. Specifically, § 2255(f)(2) applies to petitions unconstitutionally impeded by government action; § 2255(f)(3) applies to petitions based on newly recognized and retroactively applied

-6-

Case No. 4:03-CR-154
Gwin, J.

constitutional holdings; and § 2255(f)(4) applies to petitions based on newly discovered facts. Alternatively, Sanders may show that he is entitled to equitable tolling. *See King v. Bell*, 378 F.3d 550 (6th Cir. 2004).

In his petition and separate show cause motion, Sanders does not dispute these date calculations but claims that §2255(f)(2) applies because a government actor–namely, the court of appeals–impeded his filing of the petition by remanding his case for re-sentencing. [Doc. 117 at 2-3.] Sanders additionally says that his conviction was not final until April 8, 2009, because his case was still on direct appeal and that equitable tolling applies. [Doc. 115 at 2-3.]

Sanders' § 2255(f)(2) argument misses the mark. Subsection (f)(2) applies when an *unconstitutional* government action prevents the petitioner from filing the motion. Sanders alleges nothing regarding the court of appeals' remand of the case that comes near an unconstitutional action. Instead, Sanders' arguments are more appropriately construed as potential justifications for equitable tolling.

As to the finality of his conviction, Sanders similarly misunderstands the law. After his conviction in this Court, Sanders' appealed both his conviction and sentence. Although the Sixth Circuit vacated his *sentence* and remanded, it affirmed his *conviction*. *See State v. Sanders*, 404 F.3d 980 (6th Cir. 2005). This judgment effectively split the case into two separate parts: (1) the conviction, and (2) the sentence.

With this limited remand, this Court could only consider what the court of appeals had in fact remanded: the sentence. It could not and did not consider any question of whether Sanders' conviction was proper. Instead, if Sanders wished to challenge his conviction after the Sixth Circuit's 2005 ruling, he could do so through a petition for certiorari to the United States Supreme Court.

Case No. 4:03-CR-154
Gwin, J.

Sanders did not make such a petition and the non-sentence portions of his case became final on August 10, 2005, even while the sentence portion of his case remained pending.[1/]

Because Sanders did not file a petition challenging his conviction until August 2007, his claim is time barred unless equitable tolling applies. This Court finds it does not.

"The doctrine of equitable tolling allows a federal court to toll a statute of limitations when a litigant's failure to meet a legally-motivated deadline unavoidably arose from circumstances beyond the litigant's control." *Keenan v. Bagley*, 400 F.3d 417, 421 (6th Cir. 2005). The petitioner bears the burden of establishing that equitable tolling applies. *Keenan*, 400 F.3d at 421; *McClendon v. Sherman*, 329 F.3d 490 (6th Cir. 2003).

In determining whether to toll the statute of limitations, this Court considers:

(1) the petitioner's lack of notice of the filing requirement; (2) the petitioner's lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim.

*Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004) (citing *Dunlap v. United States*, 250 F.3d 1001, 1008 (6th Cir. 2001)). This list of factors is not comprehensive and not all factors are relevant in all cases. *Vroman v. Brigano*, 346 F.3d 598, 605 (6th Cir. 2003).

Sanders makes no claim that he lacked notice of the filing requirement or otherwise diligently pursued his claims. Instead, he merely repeats that it would have been "unsound judgment" for him to file a § 2255 petition while his direct appeal was pending. [Doc. 115 at 4.] Unfortunately for Sanders, his *conviction* was not on direct appeal after August 10, 2005; only his sentence was.

---

[1/]In fact, even if the Sixth Circuit had reversed this Court's *re-sentencing* of Sanders, this decision would not have affected his underlying conviction. Thus, Sanders' argument that "it's impossible to forsee [sic] and file a § 2255 without knowing the outcome of resentencing" is baseless. [Doc. 117 at 2.]

-8-

Case No. 4:03-CR-154
Gwin, J.

Therefore, § 2255(f) required he file any challenge to his conviction by August 2006, which Sanders failed to do.

Therefore, because Sanders has not identified any justification for tolling the statute of limitations, his challenges to his conviction are time barred by § 2255(f).

*III.B. Sanders' Challenge to His Sentence*

In contrast, Sanders' request for modification of his sentence under 18 U.S.C. § 3582(c)(2) is timely filed because his *sentence* did not become final for § 2255 purposes until April 2007. Even so, Sanders' challenge is denied.

Sanders says that this Court should modify his sentence by reducing his criminal history points from six to three. [Doc. 111-1 at 16-18.] Sanders bases this request on a November 2007 amendment to §4A1.2(a) of the Sentencing Guidelines, altering the definition of "related cases." According to Sanders, his two prior burglary convictions would now be treated as related cases under the 2007 amendments, reducing his criminal history points from six to three and potentially precluding application of the career offender enhancement.

This Court "reviews a sentence under the version of the guidelines in effect at the time of sentencing." *United States v. Smith*, 307 Fed. App'x 966, 969 (6th Cir., January 29, 2009). A court only applies a subsequent revision to the guidelines on review if the revision "merely clarifies the law in existence at the time of sentencing, as opposed to working a substantive change in the law." *United States v. Geerken*, 506 F.3d 461, 465 (6th Cir. 2007).

Sanders makes no argument that the November 2007 amendment was clarifying. Moreover, those courts considering the question have found the amendment substantive. *Smith*, 307 Fed. App'x at 969 (citing *United States v. Wood*, 526 F.3d 82, 88 (3d Cir. 2008); *United States v. Marler*, 527

-9-

Case No. 4:03-CR-154
Gwin, J.

F.3d 874, 878 (9th Cir. 2008)).

Sanders cites *United States v. Horn*, 590 F. Supp. 2d 976 (M.D. Tenn 2008), for the proposition that the 2007 amendment applies retroactively. In *Horn*, however, the district court merely held that whether the amendment was retroactive was a matter of judicial discretion and exercising this discretion, granted the motion for re-sentencing. 590 F. Supp. 2d at 981. In contrast, the court in *United States v. Smedley*, 2009 WL 2447932 (W.D.Ky. Aug. 7, 2009) held that it could not reduce a petitioner's sentence retroactively based on the same 2007 amendment because doing so would be inconsistent with Sentencing Commission policy. 2009 WL 2447932, at *1 (citing *United States v. Smith*, 549 F.3d 355, 363 n.2 (6th Cir. 2008)). The court in *Smedley* acknowledged the *Horn* decision, but declined to follow its reasoning because "it is inconsistent with the weight of authority." 2009 WL 2447932, at *1.

This Court agrees with *Smedley*. Therefore, even if the 2007 amendment would have altered the guidelines calculations applicable to him, Sanders cannot challenge his sentence on this basis because his sentence became final prior to the amendment's effective date.

### IV. Conclusion

For the foregoing reasons, this Court **ADOPTS** the Magistrate Judge's Report and Recommendation and **DENIES** Petitioner Sander's request for habeas relief. Further this Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could be taken in good faith, and the Court hearby issues a certificate of appealability pursuant to 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b) as to the following issues: whether 18 U.S.C. § 3582(c)(2) permits modification

Case No. 4:03-CR-154
Gwin, J.

of Sanders' sentence based on the 2007 amendment to the Sentencing Guidelines §4A1.2(b)(1)(A).

    IT IS SO ORDERED.


Dated: September 2, 2009          s/ *James S. Gwin*
                                                            JAMES S. GWIN
                                                             UNITED STATES DISTRICT JUDGE